E. BRYAN WILSON
United States Attorney
EMILY ALLEN
KELLY CAVANAUGH
RYAN TANSEY
Assistant United States Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: emily.allen@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>    vs.<br><br>ANGELA LINCOLN,<br><br>                  Defendant. | No. 3:21-cr-00094-TMB-MMS<br><br>COUNT ONE:<br>Conspiracy<br>    Vio. of 18 U.S.C. § 371<br><br>COUNT TWO:<br>Federal Program Bribery<br>    Vio. of 18 U.S.C. § 666(a)(1)(B) |

I N F O R M A T I O N

The United States Attorney charges that:

1

COUNT ONE

(Conspiracy in violation of 18 U.S.C. § 371)

Background

1. Goose Creek Correctional Center ("GCCC" or "Goose Creek") is an Alaska Department of Corrections ("DOC")-run medium-security prison for men, located in Wasilla, Alaska. The facility houses up to approximately 1,300 inmates and employs approximately 333 staff members. Goose Creek received Federal assistance in excess of $10,000 per year in both 2019 and 2020.

2. The defendant, ANGELA LINCOLN, was a Correctional Officer at Goose Creek from at least 2014 through mid-2020. As a Correctional Officer, LINCOLN was an agent of Goose Creek and Alaska DOC. It was among LINCOLN's duties to promote public safety by providing security to GCCC. Through this job, LINCOLN was expected to have daily interaction with offenders to help promote reformative programs, offender management planning, and, ultimately, successful community reentry. LINCOLN was required to protect Goose Creek inmates and staff by, among other things, ensuring that contraband—including drugs and other controlled substances and including cell phones—did not enter or remain in the facility where inmates could access them.

3. "Inmate 1" was a prisoner housed at Goose Creek, serving a 100-year sentence for two counts of first-degree murder. Inmate 1 participated in a religious organization operating at GCCC that allowed him some affiliation with other prisoners who joined the organization. These included Inmate 1's associate, "Inmate 2." Membership in this religious organization allowed Inmate 1, Inmate 2, and others to collect

2

money from their non inmate associates and family members to fund their religious programming and feasts at GCCC. In addition, non-inmate associates and family members could distribute money to an inmate's Goose Creek commissary account.

The Conspiracy and its Objects

4. Beginning at least as early as July 2019, and continuing through and around June 2020, there was an agreement between LINCOLN, Inmate 1, and others, to commit the following offenses:

    a. Federal Program Bribery, in violation of 18 U.S.C. § 666(a)(1)(B) and (a)(2);

    b. Distribution of Controlled Substances, in violation of 21 U.S.C. § 841;

    c. Providing or Possessing Contraband in Prison, in violation of 18 U.S.C. § 1791; and

    d. Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

5. It was the purpose of the conspiracy that LINCOLN would smuggle contraband, including controlled substances and cell phones, into GCCC so that Inmate 1 could further distribute them within the prison, in return for tens of thousands of dollars in bribe payments to LINCOLN, which Inmate 1 would arrange to secretly deliver in cash with help from his non-inmate associates and family members in transactions designed to conceal and disguise the true nature and source of the funds.

Manner and Means of the Conspiracy

6. The manner and means of the conspiracy were as follows:

a. LINCOLN would obtain contraband, including the Schedule III controlled substance Suboxone (or Buprenorphine), also known as "strips," and including burner cell phones that Inmate 1 used to facilitate the sale of controlled substances, from Inmate 1's associate "K.C." and through the mail. K.C. would secretly visit LINCOLN's home and dead-drop the contraband and bribe payments near LINCOLN's fence while no one was looking. K.C. would hide Suboxone strips inside books, plastic bottles, or candy wrappers to avoid suspicion when dropping the packages at the fence.

b. LINCOLN would smuggle the contraband into Goose Creek using her official position to evade security screening, knowing that doing so was in violation of her official duties and knowing that she would be paid in exchange for delivering the contraband and drugs inside GCCC.

c. Inmate 1 and his inmate associates would sell and distribute the contraband items, including the lucrative Suboxone strips, throughout GCCC, and would collect payment from other prisoners by arranging for individuals outside of GCCC to deliver money to Inmate 1's network of non-inmate associates and family members, which Inmate 1 referred to as his "grinders." These "grinders," which included Inmate 1's close friend "C.L.," "L.W.," and Inmate 2's spouse "E.N.," would further distribute the proceeds to additional "grinders" in a series of transactions designed to conceal the true nature, source, ownership, and control of the funds. Inmate 1 and Inmate 2 would coach their non-inmate associates to falsely

4

claim to law enforcement that these were payments for religious events or commissary accounts.

      d.     The "grinders" would ultimately deliver the drug proceeds to an individual Inmate 1 described as his sister, "T.W.," and later to an individual he identified as "Lisa." T.W. and Lisa would, in turn, deliver cash, money orders, and wire transfers to LINCOLN. These payments to LINCOLN were bribes given to influence and reward LINCOLN's official acts allowing contraband to be smuggled into GCCC. T.W. and Lisa would hide these payments in phony greeting cards, trinkets, and stuffed animals, or would falsely describe them as loan repayments, in order to conceal and disguise the true nature, source, ownership, and control of the bribes.

Overt Acts

7.     To accomplish the objects of the conspiracy, LINCOLN, Inmate 1, and their co-conspirators committed the following overt acts, among others:

      a.     In July or August 2019, Inmate 1 arranged for LINCOLN to communicate with T.W. directly, using a burner cell phone that Inmate 1 provided to LINCOLN, to make arrangements for the delivery of bribes.

      b.     On around the dates set forth below, LINCOLN deposited into her personal bank accounts a total of approximately $19,370 in bribe payments in the amounts listed, that T.W. had secretly delivered from the following sources, in exchange for LINCOLN's efforts successfully smuggling Suboxone and burner cell phones into GCCC:

| Date | Source | Amount |
|---|---|---|
| August 15, 2019 | Wire transfer | $1,000 |
| September 4, 2019 | Money Order | $900 |
| October 28, 2019 | Money Order | $500 |
| | Money Order | $500 |
| November 6, 2019 | Cash | $980 |
| November 13, 2019 | Money Order | $500 |
| | Money Order | $500 |
| | Cash | $200 |
| December 20, 2019 | Cash | $820 |
| | Money Order | $500 |
| | Money Order | $500 |
| January 16, 2020 | Cash | $3,900 |
| February 13, 2020 | Cash | $260 |
| February 15, 2020 | Cash | $1,090 |
| February 21, 2020 | Cash | $4,640.33 |
| February 25, 2020 | Cash | $2,580 |
| | Total: | $19,370.33 |

c. In around February 2020, Inmate 1 arranged for LINCOLN to communicate with Lisa directly, so that LINCOLN and Lisa could make arrangements for the delivery of bribes.

d. On around the dates set forth below, Lisa mailed to LINCOLN packages containing hidden cash bribe payments totaling approximately $10,000 in the amounts listed, in exchange for LINCOLN's efforts successfully smuggling Suboxone and burner cell phones into GCCC:

| Date | Source | Amount |
|---|---|---|
| March 25, 2020 | Cash | $1,000 |
| April 6, 2020 | Cash | $1,000 |
| May 6, 2020 | Cash | $2,000 |
| May 26, 2020 | Cash | $3,000 |
| June 24, 2020 | Cash | $3,000 |
| | Total: | $10,000 |

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

(Federal Program Bribery in violation of 18 U.S.C. § 666(a)(1)(B))

8. The allegations set forth in Paragraphs 1 through 6 are incorporated herein as though fully alleged.

9. At all times relevant to this Information, Goose Creek and the Alaska DOC were agencies of the State of Alaska government that received federal assistance in excess of $10,000 during the one-year period beginning January 1, 2020 and ending December 31, 2020.

10. The defendant, ANGELA LINCOLN, was an agent of Goose Creek and the Alaska DOC, whose duties included providing security to GCCC, its inmates, and staff by, among other things, ensuring that contraband—including drugs and other controlled substances and including cell phones—did not enter or remain in the facility where inmates could access them.

11. On or about May 26, 2020, in the District of Alaska, LINCOLN did corruptly solicit, demand, accept, and agree to accept a thing of value from a person, intending to be influenced and rewarded in connection with a transaction and series of transactions of GCCC involving $5,000 or more, in that LINCOLN received a $3,000 cash delivery, which was part of a series of transactions totaling nearly $30,000 in bribe payments to LINCOLN, from an individual working on behalf of Inmate 1, in exchange for LINCOLN's official acts allowing contraband to be smuggled into GCCC.

E. BRYAN WILSON
Acting United States Attorney

s/ Emily W. Allen
EMILY W. ALLEN
KELLY CAVANAUGH
RYAN TANSEY
United States of America
Assistant U.S. Attorneys