E. BRYAN WILSON
United States Attorney

EMILY ALLEN
KELLY CAVANAUGH
RYAN TANSEY
Assistant United States Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: emily.allen@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>  vs.<br><br>ANGELA LINCOLN,<br><br>     Defendant. | ) No. _____<br>)<br>)<br>) **PLEA AGREEMENT**<br>)<br>)<br>)<br>)<br>) |

  **Unless the parties jointly inform the Court in writing of any additional agreements, this document in its entirety contains the terms of the plea agreement between the defendant and the United States. This agreement is limited to the District of Alaska; it does not bind other federal, state, or local prosecuting authorities.**

## I. SUMMARY OF AGREEMENT, FEDERAL RULE OF CRIMINAL PROCEDURE 11

### A. Summary of Agreement

The defendant agrees to plead guilty to a two-count Information to be filed in this case, charging defendant with one count of Conspiracy, in violation of Title 18, United States Code, Section 371, and one count of Federal Program Bribery, in violation of Title 18, United States Code, Section 666(a)(1)(B). The United States agrees not to prosecute the defendant further for any other offense related to the events that resulted in the charges contained in the Information.

The defendant will waive all rights to appeal the convictions and sentence imposed under this agreement. The defendant will also waive all rights to collaterally attack the convictions and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the pleas.

### B. Federal Rule of Criminal Procedure 11

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(A) and (B) will control this plea agreement. Thus, the defendant may not withdraw from this agreement or the guilty pleas if the Court rejects the parties' sentencing recommendations at the sentencing hearing.

*U.S. v. Lincoln*

II.    **CHARGES, ELEMENTS, FACTUAL BASIS, STATUTORY PENALTIES AND OTHER MATTERS AFFECTING SENTENCE**

A.    **Charges**

**The defendant agrees to plead guilty to the following count(s) of the Information:**

Count One: Conspiracy, in violation of Title 18, United States Code, Section 371.

Count Two: Federal Program Bribery, in violation of Title 18, United States Code, Section 666(a)(1)(B).

B.    **Elements**

<u>Count One: Conspiracy, in violation of 18 U.S.C. § 371</u>

1)    Beginning at least as early as July 2019, and continuing through around June 2020, there was an agreement between two or more persons to commit at least one of the following offenses:

      a.  Federal Program Bribery, in violation of 18 U.S.C. § 666(a)(1)(B) and (a)(2);

      b.  Distribution of Controlled Substances, in violation of 21 U.S.C. § 841;

      c.  Providing or Possessing Contraband in Prison, in violation of 18 U.S.C. § 1791; and

      d.  Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

2)    The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

*U.S. v. Lincoln*

3)      At least one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

<u>Count Two: Federal Program Bribery, in violation of 18 U.S.C. § 666(a)(1)(B)</u>

1)      The Defendant was an agent of an organization, a state, local or tribal government, or an agency of a state, local, or tribal government.

2)      The defendant solicited or demanded for the benefit of any person, or accepted or agreed to accept, a thing of value from any person.

3)      The defendant intended to be influenced or rewarded in connection with a transaction or series of transactions of the organization or agency that involved $5,000 or more.

4)      The defendant acted corruptly.

5)      The organization, state or local government, state or local government agency, or tribal government, received federal assistance under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance or other form of Federal assistance in excess of $10,000 per year in 2019 and 2020.

**C.      Factual Basis**

The defendant admits the truth of the allegations in Counts One and Two of the Information and the truth of the following statement, and the parties stipulate that the Court may rely upon this statement to support the factual basis for the guilty pleas and for the imposition of the sentence:

*U.S. v. Lincoln*

Goose Creek Correctional Center ("GCCC" or "Goose Creek") is an Alaska Department of Corrections ("DOC")-run medium-security prison for men, located in Wasilla, Alaska. The facility houses up to approximately 1,300 inmates and employs approximately 333 staff members. Goose Creek received Federal assistance in excess of $10,000 per year in both 2019 and 2020.

The defendant, Angela Lincoln, was a Correctional Officer at Goose Creek from at least 2014 through mid-2020. As a Correctional Officer the defendant was an agent of Goose Creek and Alaska DOC. It was among the defendant's duties to promote public safety by providing security to GCCC. Through this job, the defendant was expected to have daily interaction with offenders to help promote reformative programs, offender management planning, and, ultimately, successful community reentry. The defendant was required to protect Goose Creek inmates and staff by, among other things, ensuring that contraband—including drugs and other controlled substances and including cell phones—did not enter or remain in the facility where inmates could access them.

"Inmate 1" was a prisoner housed at Goose Creek, serving a 100-year sentence for two counts of first-degree murder. Inmate 1 participated in a religious organization operating at GCCC that allowed him some affiliation with other prisoners who joined the organization. These included Inmate 1's associate, "Inmate 2." Membership in this religious organization allowed Inmate 1, Inmate 2, and others to collect money from their non-inmate associates and family members to fund their religious programming and

feasts at GCCC. In addition, non-inmate associates and family members could distribute money to an inmate's Goose Creek commissary account.

Beginning at least as early as July 2019, the defendant agreed with Inmate 1 and others to smuggle contraband, including controlled substances and cell phones, into GCCC so that Inmate 1 could further distribute them within the prison, in return for tens of thousands of dollars in bribe payments to the defendant, which Inmate 1 would arrange to secretly deliver in cash with help from his non-inmate associates and family members in transactions designed to conceal and disguise the true nature and source of the funds.

The conspiracy operated as follows:

- The defendant would obtain contraband, including the Schedule III controlled substance Suboxone (or Buprenorphine), also known as "strips," and including burner cell phones that Inmate 1 used to facilitate the sale of controlled substances, from Inmate 1's associate "K.C." and through the mail. K.C. would secretly visit the defendant's home and dead-drop the contraband and bribe payments near the defendant's fence while no one was looking. K.C. would hide Suboxone strips inside books, plastic bottles, or candy wrappers to avoid suspicion when dropping the packages at the fence.

- The defendant would smuggle the contraband into Goose Creek using her official position to evade security screening, knowing that doing so was in violation of her official duties and knowing that she would be paid in exchange for delivering the contraband and drugs inside GCCC.

*U.S. v. Lincoln*

\- Inmate 1 and his inmate associates would sell and distribute the contraband items, including the lucrative Suboxone strips, throughout GCCC, and would collect payment from other prisoners by arranging for individuals outside of GCCC to deliver money to Inmate 1's network of non-inmate associates and family members, which Inmate 1 referred to as his "grinders." These "grinders," which included Inmate 1's close friend "C.L.," "L.W.," and Inmate 2's spouse "E.N.," would further distribute the proceeds to additional "grinders" in a series of transactions designed to conceal the true nature, source, ownership, and control of the funds. Inmate 1 and Inmate 2 would coach their non-inmate associates to falsely claim to law enforcement that these were payments for religious events or commissary accounts.

\- The "grinders" would ultimately deliver the drug proceeds to an individual Inmate 1 described as his sister, "T.W.," and later to an individual he identified as "Lisa." T.W. and Lisa would, in turn, deliver cash, money orders, and wire transfers to the defendant. These payments to the defendant were bribes given to influence and reward the defendant's official acts allowing contraband to be smuggled into GCCC. T.W. and Lisa would hide these payments in phony greeting cards, trinkets, and stuffed animals, or would falsely describe them as loan repayments, in order to conceal and disguise the true nature, source, ownership, and control of the bribes.

To accomplish the objects of the conspiracy, the defendant, Inmate 1, and their co-conspirators committed the following overt acts, among others:

*U.S. v. Lincoln*

-       In July or August 2019, Inmate 1 arranged for the defendant to communicate with T.W. directly, using a burner cell phone that Inmate 1 provided to the defendant, to make arrangements for the delivery of bribes.

-       On around the dates set forth below, the defendant deposited into her personal bank accounts a total of approximately $19,370 in bribe payments in the amounts listed, that T.W. had secretly delivered from the following sources, in exchange for the defendant's efforts successfully smuggling Suboxone and burner cell phones into GCCC:

| Date | Source | Amount |
|---|---|---|
| August 15, 2019 | Wire transfer | $1,000 |
| September 4, 2019 | Money Order | $900 |
| October 28, 2019 | Money Order | $500 |
| | Money Order | $500 |
| November 6, 2019 | Cash | $980 |
| November 13, 2019 | Money Order | $500 |
| | Money Order | $500 |
| | Cash | $200 |
| December 20, 2019 | Cash | $820 |
| | Money Order | $500 |
| | Money Order | $500 |
| January 16, 2020 | Cash | $3,900 |
| February 13, 2020 | Cash | $260 |
| February 15, 2020 | Cash | $1,090 |
| February 21, 2020 | Cash | $4,640.33 |
| February 25, 2020 | Cash | $2,580 |
| | **Total:** | **$19,370.33** |

*U.S. v. Lincoln*

-    In around February 2020, Inmate 1 arranged for the defendant to communicate with Lisa directly, so that the defendant and Lisa could make arrangements for the delivery of bribes.

-    On around the dates set forth below, Lisa mailed to the defendant packages containing hidden cash bribe payments totaling approximately $10,000 in the amounts listed, in exchange for the defendant's efforts successfully smuggling Suboxone and burner cell phones into GCCC:

| Date | Source | Amount |
|------|--------|--------|
| March 25, 2020 | Cash | $1,000 |
| April 6, 2020 | Cash | $1,000 |
| May 6, 2020 | Cash | $2,000 |
| May 26, 2020 | Cash | $3,000 |
| June 24, 2020 | Cash | $3,000 |
| | **Total:** | **$10,000** |

-    On around June 16, 2020, the defendant falsely reported to agents with the Federal Bureau of Investigation (FBI) that she knew T.W. through Facebook and that they began a friendship after the defendant sold T.W. some old DVDs, video games, and an old meat grinder. The defendant falsely denied knowing that T.W. had any relationship with Inmate 1. In fact, at the time of that interview with the FBI, the defendant was aware that Inmate 1 described T.W. as his sister, and that the money she received from T.W. were bribe payments in

return for the defendant's official acts smuggling Suboxone and cell phones into GCCC.

- In accepting multiple money bribes involving approximately $30,000 originating from Inmate 1, the defendant acted corruptly and intended to be influenced and rewarded in connection with her official duties to secure the Goose Creek facility and prevent the introduction of contraband to the prison.

## D. Statutory Penalties and Other Matters Affecting Sentence

### Statutory Penalties

The maximum statutory penalties applicable to the charges to which the defendant is pleading guilty, based on the facts to which the defendant will admit in support of the guilty pleas, are as follows:

Count One: Conspiracy, in violation of 18 U.S.C. § 371

    1) Five years' imprisonment;

    2) A $250,000 fine;

    3) A $100 special assessment; and

    4) A three-year term of supervised release.

Count Two: Federal Program Bribery, in violation of 18 U.S.C. § 666(a)(1)(B)

    1) Ten years' imprisonment;

    2) A $250,000 fine;

    3) A $100 special assessment; and

    4) A three-year term of supervised release.

*U.S. v. Lincoln*

### Other Matters Affecting Sentence

#### a. Conditions Affecting the Defendant's Sentence

The following conditions may also apply and affect the defendant's sentence: 1) pursuant to Comment 7 of U.S.S.G. § 5E1.2, the Court may impose an additional fine to pay the costs to the government of any imprisonment and supervised release term; 2) pursuant to 18 U.S.C.§ 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date; 3) upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time already spent on supervised release; 4) the Court may order the defendant to pay restitution pursuant to  the 18 U.S.C. § 3663 and U.S.S.G. § 5E1.1, and if 18 U.S.C. § 3663A (mandatory restitution for certain crimes) applies, the Court shall order the defendant to pay restitution.

#### b. Payment of Special Assessment

The defendant agrees to pay the entire special assessment in this case on the day the Court imposes the sentence.  All payments will be by check or money order, and are to be delivered to the Clerk of Court, United States District Court, 222 W. 7th Ave. Box 4, Rm. 229, Anchorage, AK 99513-7564.

#### c. Consequences of Felony Conviction

Any person convicted of a federal felony offense may lose or be denied federal benefits including any grants, loans, licenses, food stamps, welfare or other forms of public assistance, as well as the right to own or possess any firearms, the right to vote, the

*U.S. v. Lincoln*

right to hold public office, and the right to sit on a jury. If applicable, any defendant who is not a United States citizen may be subject to deportation from the United States following conviction for a criminal offense, be denied citizenship, and not permitted to return to the United States unless the defendant specifically receives the prior approval of the United States Attorney General. In some circumstances, upon conviction for a criminal offense, any defendant who is a naturalized United States citizen may suffer adverse immigration consequences, including but not limited to possible denaturalization.

### E.     Forfeiture

The defendant admits and agrees to forfeit to the United States all proceeds the defendant obtained in the amount of $29,370.33, which shall be included in the judgment in this case. The defendant acknowledges that the forfeiture in this amount represents the proceeds of illegal conduct in violation of 18 U.S.C. §§ 371 and 666(a)(1)(B).

The defendant agrees to the immediate entry of a preliminary order of forfeiture upon entry of the guilty pleas in this case, and that such order will be final as to the defendant. The defendant agrees not to contest or bring any claim in pending administrative or civil forfeiture proceedings to properties seized in connection with this case, including those relating to:

- $1,340 in U.S. currency seized from the defendant on around June 16, 2020; and

- $3,000 in U.S. currency that the defendant provided to the United States on around July 2, 2020.

*U.S. v. Lincoln*

The United States agrees that the forfeiture of this $4,340 in U.S. currency should be applied to the defendant's total forfeiture obligation in this case. The defendant agrees to pay the remaining balance subject to forfeiture forthwith, and not later than the time of sentencing.

The defendant waives the right to notice of any forfeiture proceeding involving this property, agrees not to assist others in filing a claim to said property in any forfeiture proceeding, and will take all steps as requested by the United States to pass clear title to the above-described property to the United States, including but not limited to, executing documents and testifying truthfully in any forfeiture proceeding. The defendant further agrees to cooperate to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture.

Defendant understands and acknowledges that the United States is relying upon the Defendant's truthful asset forfeiture disclosure and cooperation in entering into this plea agreement. If Defendant fails to cooperate or is untruthful in this regard, the United States may declare a material breach of this plea agreement or may recommend against an adjustment for Acceptance of Responsibility.

## III. ADVISORY UNITED STATES SENTENCING GUIDELINES, GUIDELINE APPLICATION AGREEMENTS, SENTENCING RECOMMENDATIONS

### A. Advisory United States Sentencing Guidelines

The Court must consult the advisory United States Sentencing Commission Guidelines [U.S.S.G.] as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the sentence to impose. The U.S.S.G. do not establish the statutory

*U.S. v. Lincoln*

maximum or minimum sentence applicable to the offense(s) to which the defendant is pleading guilty. The U.S.S.G. are not mandatory and the Court is not bound to impose a sentence recommended by the U.S.S.G.

**B.      Guideline Application Agreements**

The parties have no agreements on any guideline applications unless set forth below in this section.

### Acceptance of Responsibility

If the United States concludes that the defendant has satisfied the criteria set out in U.S.S.G. § 3E1.1 and the applicable application notes, the United States agrees to recommend the defendant for a two-level downward adjustment for acceptance of responsibility and, if U.S.S.G. § 3E1.1(b) applies, to move for the additional one level adjustment for acceptance of responsibility. If, at any time prior to imposition of the sentence, the United States concludes that the defendant has failed to fully satisfy the criteria set out in U.S.S.G. § 3E1.1, or has acted in a manner inconsistent with acceptance of responsibility, the United States will not make or, if already made, will withdraw this recommendation and motion.

### U.S.S.G. § 2C1.1(a)(1)

The parties agree that the defendant was a public official and the applicable base offense level is 14.

### U.S.S.G. § 2C1.1(b)(1)

The parties agree that the offense involved more than one bribe, and therefore that the offense level should be increased by 2 levels.

*U.S. v. Lincoln*

**U.S.S.G. § 2C1.1(b)(2) and 2B1.1(b)(1)(C)**

The parties agree that the value of the payments to the defendant is approximately $30,000, and therefore that the offense level should be increased by 4 levels.

**C.    Sentencing Recommendations**

The United States Probation Office will prepare the defendant's pre-sentence report in which it will include a recommended calculation of the defendant's sentence range under the U.S.S.G.  Both the United States and the defendant will have the opportunity to argue in support of or in opposition to the guideline sentence range calculation the U.S.P.O. recommends, as well as present evidence in support of their respective sentencing arguments.

The parties are free to recommend to the Court their respective positions on the appropriate sentence to be imposed in this case based on the stipulated facts set forth in Section II.C, any additional facts established at the imposition of sentence hearing, the applicable statutory penalty sections, the advisory U.S.S.G., and the sentencing factors set forth in 18 U.S.C. § 3553.  The United States agrees to recommend a sentence at the low end of the applicable U.S.S.G. range as calculated by the government.

**IV.    ADDITIONAL AGREEMENTS BY UNITED STATES**

In exchange for the defendant's guilty pleas and the Court's acceptance of the defendant's pleas and the terms of this agreement, the United States agrees that it will not prosecute the defendant further for any other offense – now known – arising out of the subject of the investigation related to the charges brought in the Information in this case and the defendant's admissions set forth in Section II.C.

*U.S. v. Lincoln*

Provided, however, if the defendant's guilty pleas or sentence is/are rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case including any charges dismissed pursuant to the terms of this agreement, which charges will be automatically reinstated, as well as for perjury and false statements. The defendant hereby agrees that he/she waives any defense that the statute of limitations bars the prosecution of such a reinstated charge.

## V. WAIVER OF TRIAL RIGHTS, APPELLATE RIGHTS, COLLATERAL ATTACK RIGHTS, CLAIM FOR ATTORNEY FEES AND COSTS, AND RULE 410

### A. Trial Rights

Being aware of the following, the defendant waives these trial rights:

- If pleading to an Information, the right to have the charges presented to the grand jury prior to entering the guilty plea;

- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;

- The right to object to the composition of the grand or trial jury;

- The right to plead not guilty or to persist in that plea if it has already been made;

- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

- The right to be represented by counsel at trial and if necessary to have counsel appointed at public expense to represent the defendant at trial – the defendant is not waiving the right to have counsel continue to represent the defendant during the sentencing phase of this case;

- The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear in the defendant's behalf;

- The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf; and

- The right to contest the validity of any searches conducted on the defendant's property or person.

## B. Appellate Rights

The defendant waives the right to appeal the conviction(s) resulting from the entry of guilty plea(s) to the charges set forth in this agreement. The defendant further agrees that if the Court imposes a sentence that does not exceed the statutory maximum penalties as set forth in Section II(D) above in this agreement, the defendant waives without exception the right to appeal on all grounds contained in 18 U.S.C. § 3742 the sentence the Court imposes. The defendant understands that this

*U.S. v. Lincoln*

waiver includes, but is not limited to, forfeiture (if applicable), terms or conditions of probation (if applicable) or supervised release, any fines or restitution, and any and all constitutional (or legal) challenges to defendant's convictions and guilty pleas, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

The defendant agrees that the appellate and collateral attack waivers contained within this agreement will apply to any 18 U.S.C. § 3582(c) modifications, as well as the district court's decision to deny any such modification.

Should the defendant file a notice of appeal in violation of this agreement, it will constitute a material breach of the agreement. The government is free to reinstate any dismissed charges, and withdraw any motions for downward departures, or sentences below the mandatory minimum made pursuant to 18 U.S.C. § 3553(e).

## C.   Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack the resulting convictions and/or sentence – including forfeiture (if applicable) or terms or conditions of probation (if applicable) or supervised release, and any fines or restitution – the Court imposes. The only exceptions to this collateral attack waiver are as follows: 1) any challenge to the convictions or sentence alleging ineffective assistance of counsel – based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; and 2) a challenge to the voluntariness of the defendant's guilty pleas.

*U.S. v. Lincoln*

### D. Claim for Attorney Fees and Costs

Because this is a negotiated resolution of the case, the parties waive any claim for the award of attorney fees and costs from the other party.

### E. Evidence Rule 410 and Fed. R. Crim. P. 11(f)

By signing this agreement, the defendant admits the truth of the facts in the Factual Basis portion of this agreement set forth in Section II.C. The defendant agrees that the statements made by her in signing this agreement shall be deemed usable and admissible against the defendant as stipulations in any hearing, trial or sentencing that may follow. The foregoing provision acts as a modification, and express waiver, of Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f), and is effective upon the defendant's in-court admission to the factual basis supporting the pleas. This provision applies regardless of whether the court accepts this plea agreement.

## VI. ADEQUACY OF THE AGREEMENT

Pursuant to Local Criminal Rule 11.2(d)(9), this plea agreement is appropriate in that it conforms with the sentencing goals that would otherwise be applicable to the defendant's case if the defendant had gone to trial and had been convicted on all counts in the charging instrument.

## VII. THE DEFENDANT'S ACCEPTANCE OF THE TERMS OF THIS PLEA AGREEMENT

I, Angela Lincoln, the defendant, affirm this document contains all of the agreements made between me – with the assistance of my attorney – and the United States regarding my plea(s). There are no other promises, assurances, or agreements the

*U.S. v. Lincoln*

United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement. If there are any additional promises, assurances, or agreements, United States and I will jointly inform the Court in writing before I enter my guilty pleas.

I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty. If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I stand before it to enter my plea.

I enter into this agreement understanding and agreeing that the conditions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill these obligations will constitute a material breach of this agreement. If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand the government's burden to prove a breach will be by a preponderance of the evidence.

I understand the Court will ask me under an oath to answer questions about the offenses to which I am pleading guilty and my understanding of this plea agreement. I understand that I may be prosecuted if I make false statements or give false answers and may suffer other consequences set forth in this agreement.

*U.S. v. Lincoln*

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to enter my pleas. I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with my attorney is privileged and confidential, and cannot be revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty pleas. My attorney and I have discussed all possible defenses to the charges to which I am pleading guilty. My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction. My attorney has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction. We have discussed the statutes applicable to my offense and sentence as well as the possible effect the U.S.S.G. may have on my sentence.

Based on my complete understanding of this plea agreement, I therefore admit that I am guilty of Counts One and Two of the Information.

DATED: _11-5-2021_                           _Angela Lincoln_
                                             ANGELA LINCOLN
                                             Defendant

*U.S. v. Lincoln*

As counsel for the defendant, I have conveyed all formal plea offers. I have discussed the terms of this plea agreement with the defendant, have fully explained the charges to which the defendant is pleading guilty, the necessary elements thereto, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competence to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

DATED: 5 NOV 21

JANE IMHOLTE
Alaska Federal Defender
Attorney for Angela Lincoln

On behalf of the United States, the following accepts the defendant's offer to plead guilty under the terms of this plea agreement.

DATED: 11/10/2021

E. BRYAN WILSON
United States of America
United States Attorney

*U.S. v. Lincoln*